[Cite as *State v. Jenkins*, 2021-Ohio-1978.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | : | Hon. John W. Wise, J. |
| | : | Hon. Earle E. Wise, Jr., J. |
| -vs- | : | |
| | : | |
| TERRANCE JENKINS | : | Case No. 2020-CA-0071 |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Appeal from the Court of Common
                            Pleas, Case No. 2020CR214

JUDGMENT:                   Affirmed

DATE OF JUDGMENT:           June 10, 2021

APPEARANCES:

For Plaintiff-Appellee                For Defendant-Appellant

JOSEPH C. SNYDER                      R. JOSHUA BROWN
38 South Park Street                  32 Lutz Avenue
Mansfield, OH  44902                  Lexington, OH  44904

*Wise, Earle, J.*

{¶ 1} Defendant-Appellant Terrance Jenkins appeals the October 27, 2020 judgment of conviction and sentence of the Richland County Court of Common Pleas finding him guilty of attempted murder, aggravated robbery, felonious assault, and domestic violence. Plaintiff-Appellee is the state of Ohio.

FACTS AND PROCEDURAL HISTORY

{¶ 2} On March 7, 2020 around 9:00 p.m., Desirae Hall arrived at the home of Appellant's father on Grandridge Avenue in Mansfield Ohio to drop off the two children she has in common with Appellant. Hall arranged for Appellant, her on-again-off-again boyfriend, to watch the children while she and her cousin, Angelina Stevens-Fox, spent some time together. Transcript of trial (T.) 35-37

{¶ 3} While Hall took the children into the house, Stevens-Fox waited in the car. Appellant went out to the car, got in the back seat and began talking to Stevens-Fox. While doing so, he took Hall's phone off the charger and began searching through the device. T. 93, 95-97.

{¶ 4} When Hall returned to the car she opened the driver's side rear door looking for an item for one of the children. Due to engaged child locks, Appellant exited Hall's car through the window on the rear passenger side with Hall's phone in his hand. Appellant approached her by the open rear passenger door. Hall asked Appellant why he had her phone and Appellant in turn began questioning Hall about men she was communicating with via messaging on her phone. Appellant then put the phone into his pocket, slammed the car door, grabbed Hall by the throat and began mercilessly punching, kicking and strangling her. T. 44-48, 100-105.

{¶ 5} Stevens-Fox jumped out of the car and attempted to stop Appellant. She heard Appellant say "I'm going to kill you bitch" as he assaulted Hall. Stevens-Fox kicked Appellant attempting to get him to stop, yet he continued. The assault was so savage that Stevens-Fox believed Appellant was going to kill Hall. T. 101-102.

{¶ 6} While that was going on, Corey Thoman and his cousin Dakota Thoman were travelling to the grocery store in Dakota's car. When Dakota turned onto Grandridge Avenue, the men witnessed two people in the middle of the road. As they drove closer, they observed Appellant brutally assaulting Hall and Stevens-Fox running around as if she did not know what to do. Upon their approach, Appellant dragged Hall out of the roadway by her hair, while still kicking and punching her, and waived Dakota and Corey through "like there was nothing to see." T. 130, 150-154.

{¶ 7} Instead of driving on the men stopped and jumped out of their vehicle to assist Hall. As they did, Appellant fled the scene. Corey and Dakota approached Hall and rendered aid until an ambulance arrived. T. 154-155. Because the beating he observed was so extreme, Cory believed Hall would have died had he and Dakota not stopped to intervene. T. 135.

{¶ 8} Appellant's father Harold Jenkins, came out of the house after Appellant fled. Although Jenkins testified at trial that he gave Hall her phone back at the scene, Corey observed Jenkins returning a shoe to Hall which had come off during the beating. T. 65, 157. Hall never got her phone back from Appellant and had to buy a new one. T. 64-65.

{¶ 9} Hall sustained serious injuries as a result of the beating which have left her disfigured. Initially her face was so swollen she could not see out of either eye. Her injuries included a shattered nasal bone, shattered orbital socket, a broken maxilla and

cheekbone, and lacerations that required sutures. T. 52-53, 205, 236. She exhibited linear bruising on her neck consistent with having been strangled. T. 242-244. Hall was unable to open her mouth for three weeks after the incident. Her maxilla healed crookedly, and due to her shattered orbital socket, one eye is now situated lower than the other. Detective Larry Schacherer, a 20-year veteran of the Mansfield Police Department arrived first on the scene and stated he had never observed someone "that injured and still alive." T. 213.

{¶ 10} On April 13, 2020 the Richland County Grand Jury returned an indictment charging Appellant with one count of attempted murder, a felony of the first degree, one count of aggravated robbery, a felony of the first degree, one count of felonious assault, a felony of the second degree, and one count of domestic violence, a misdemeanor of the first degree.

{¶ 11} Appellant pled not guilty to the charges and opted to proceed to a bench trial which began on October 9, 2020.  After hearing all the evidence the trial court found Appellant guilty as charged. Appellant was ordered to serve 9 to 13.5 years for count one, attempted murder. The trial court merged the remaining convictions into count one.

{¶ 12} Appellant filed an appeal and the matter is now before this court for consideration. He raises two assignments of error as follow:

I

{¶ 13} "THE VERDICTS FOR ATTEMPTED MURDER AND AGGRAVATED ROBBERY WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE. IT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE TO CONVICT A DEFENDANT FOR ATTEMPTED MURDER WHEN THE ONLY EVIDENCE OF INTENT IS HEARSAY TESTIMONY WHICH WAS THEN SUBSEQUENTLY IMPEACHED."

II

{¶ 14} "AN INDIVIDUAL CANNOT BE CONVICTED OF AGGRAVATED ROBBERY WHEN THE FORCE USED WAS AFTER A COMPLETED THEFT OFFENSE AND THE VICTIM IS UNAWARE OF THE THEFT, AND FORCE INFLICTED WAS FOR THE SEPARATE ANIMUS TO COMMIT THE MISDEMEANOR OFFENSE OF DOMESTIC VIOLENCE."

I

{¶ 15} Despite its caption, under his first assignment of error Appellant argues only that his conviction for attempted murder is against the manifest weight of the evidence. Specifically, Appellant argues the state failed to demonstrate he possessed the intent to kill Hall. We disagree.

{¶ 16} On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). See also, *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997). The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Martin* at 175.

{¶ 17} R.C. 2923.02(A) provides, "No person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense." R.C. 2903.02(A) provides, "No person shall purposely cause the death of another * * *." A

person acts purposely when he or she specifically intends to cause a particular result. R.C. 2901.22(A).

{¶ 18} "Under Ohio law, the trier of fact may infer an intention to kill from the surrounding circumstances where the natural and probable consequence of a defendant's actions is to produce death." *State v. Jones*, 5th Dist. Richland No. 2016CA0045 2017-Ohio-8633 ¶ 65 citing *State v. Turner*, 10th Dist. Franklin No. 97APA05-709, 1997 WL 798770; *State v. Robinson*, 161 Ohio St. 213, 118 N.E.2d 517 (1954) paragraph five of the syllabus.

{¶ 19} We find the record contains ample evidence to support Appellant's intent to kill Hall and overcome his manifest weight challenge.

{¶ 20} Trial testimony included evidence of Appellant's jealous, controlling, violent, and obsessive behavior toward Hall before the events of March 7, 2020. Appellant prohibited Hall from going anywhere without him, having a password on her phone, or talking to others. He called or sent texts to Hall incessantly when they were not together and would show up at her home unannounced. T. 27-28, 32, 34. If Hall attempted to strike up a relationship with another man, Appellant would sabotage the attempt. T. 43. In February 2020 when the two were split up, Appellant ominously texted "I'm stuck on you. If I can't have you no one can, I promise you that babe." T. 32.

{¶ 21} In a statement to law enforcement several days after the assault, Hall believed that during the assault when she pled with Stevens-Fox for help, Appellant stated "* * * there's no help. I'm gonna kill her."  T. 79-80.

{¶ 22} Stevens-Fox testified at trial that after approximately two minutes of assaulting Hall, Appellant stated "I'm going to kill you bitch." T. 102. While Appellant points out Stevens-Fox did not include this detail in her statement to police at the scene, when

questioned regarding this omission at trial she explained she was in shock and worried about whether or not Hall would survive her injuries: "My mind was racing * * * I couldn't talk right * * *I couldn't even tell them, you know, what was going on. So I knew at that point my head was messed up." T. 122.

{¶ 23} Cory Thoman also testified he witnessed an assault so violent that he believed Appellant would have killed Hall had he and his cousin not stopped to help. Indeed, Appellant attempted to waive the cousins on as he continued assaulting Hall at the same time, indifferent to the fact the men were witnessing his actions. T. 130, 135, 150-154.

{¶ 24} Moreover, in addition to punching and kicking Hall, Appellant also strangled Hall. Certified Nurse Practitioner Rachel Muir treated Hall and testified at trial. She explained strangulation is lethal force which can result in suffocation or stroke. T. 241-242.

{¶ 25} Detective Mark Perry of the Mansfield Police Department who has received specialized training in domestic violence related crimes also testified regarding the dangers of strangulation. He described strangulation as a "pre-homicidal act," explaining it does not take much pressure to stop the flow of blood and oxygen to the brain and cause the death of the victim. Perry also noted that while it is relatively rare to see evidence of strangulation in the form of bruising, in this case Hall did exhibit bruising on her neck. T. 203, 215-26.

{¶ 26} Appellant also points to Hall's statement given to police on March 10, 2020 wherein she stated "* * * so at some point something made him stop punching me. Maybe seeing the blood." T. 78. According to Appellant this evidence supports a conclusion that this was a "crime of passion" instead of an attempted murder. But as the state points out,

Hall's statement was speculative. Moreover, Cory and Dakota Thoman both testified that Appellant ran when they jumped out of their car to assist Hall. T. 154-155.

{¶ 27} Finally, without providing a transcript reference, Appellant states the trial court during sentencing "* * *so much as admits the Appellant did not have the requisite intent to kill because he lost control." Appellant's brief at 7. Upon review of the sentencing transcript we find this claim disingenuous.

{¶ 28} Upon thorough review of the record, we find the trial court did not lose its way in finding Appellant possessed the intent to kill Hall and finding Appellant guilty of attempted murder.

{¶ 29} The first assignment of error is overruled.

II

{¶ 30} In his second assignment of error, Appellant makes a sufficiency argument. He argues his conviction for aggravated robbery is not supported by the record because the theft offense was completed before the assault began and the victim was unaware of the theft. He additionally argues the force inflicted was committed with a separate animus to commit domestic violence. Specifically Appellant argues he did not assault Hall to gain possession of her cell phone or in order to flee after gaining possession of the phone, but rather because of what he found on the phone.

Applicable Law

{¶ 31} On review for sufficiency, a reviewing court is to examine the evidence presented at trial to determine whether such evidence, if believed, would support a conviction. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991). "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven

beyond a reasonable doubt."  *Jenks* at paragraph two of the syllabus, following *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

{¶ 32} "In a criminal case, criminal intent is usually a question of fact for determination by the jury, and it can be inferred from facts and circumstances reasonably tending to manifest a mental attitude." *State v. Wallen*, 21 Ohio App.2d 27, 254 N.E.2d 716 (5th Dist.) at paragraph 4 of the syllabus.

{¶ 33} The indictment in this matter charged Appellant with aggravated robbery pursuant to R.C. 2911.01(A)(3) which provides in relevant part: "No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, * * * shall inflict * * * serious physical harm on another."

{¶ 34} R.C. 2913.02 provides in relevant part:

> (A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:
>
> (1) Without the consent of the owner or person authorized to give consent;
>
> * * *
>
> (B)(1) Whoever violates this section is guilty of theft.

{¶ 35} The state's bill of particulars for aggravated robbery provides "On March 7, 2020 * * * [Appellant] did steal the cell phone of Desirae Hall and did cause serious physical harm to her by physically assaulting her." Bill of particulars filed August 25, 2020.

Analysis

{¶ 36} We start by addressing Appellant's argument that Hall was unaware of any theft. The record indicates Hall was aware Appellant had taken her phone without her consent. When she returned to the car and saw Appellant with her phone in his hand, Hall asked Appellant why he had her phone. T. 45. Immediately before Appellant began assaulting Hall, he placed the cell phone in his pocket. T. 64. Hall never got her phone back from Appellant and was therefore aware of theft. *Id.*

{¶ 37} These same facts establish Appellant did in fact commit a theft. The fact that Appellant put the phone in his pocket and never returned it to Hall demonstrates Appellant's intent to deprive Hall of her property. While Appellant's father Harold Jenkins testified he returned Hall's phone to her after Appellant fled, Hall and Cory Thoman testified Jenkins had returned her shoe, not her phone. Further, the trial court specifically found Jenkins' testimony incredible. Findings of Fact and Conclusions of Law filed October 15, 2020 at page 3.

{¶ 38} Next, Appellant's separate animus argument differs from a sufficiency argument. We first find that Appellant's reason for assaulting Hall is not relevant to whether or not he committed aggravated robbery. What is relevant is that Appellant caused serious physical harm to Hall while committing a theft offense. The record as outlined above demonstrates Appellant intended not only to cause Hall serious physical harm, but also to leave the scene with her cell phone. These acts occurred contemporaneously.

{¶ 39} We find the evidence presented at trial sufficient to support Appellant's conviction for aggravated robbery.

{¶ 40} Appellant's second assignment of error is overruled.

{¶ 41} The judgment of the Richland County Court of Common Pleas is affirmed.

By Wise, Earle, J.

Gwin, P.J. and

Wise, John, J. concur.

EEW/rw

[Cite as *State v. Jenkins*, 2021-Ohio-1978.]